IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00124-FL

**Jacqueline Mechelle Sellars,**

            Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

            Defendant.

**Memorandum & Recommendation**

Plaintiff Jacqueline Mechelle Sellars instituted this action on June 5, 2015, to challenge the denial of her application for social security income. Sellars claims that Administrative Law Judge Wanda Wright erred in her determination by failing to find that Sellars met or equaled Listing 1.02, failed to adequately address the effects of Sellars's obesity on her ability to perform work activity, finding that Sellars had the residual functional capacity ("RFC") to perform a reduced range of light work, and by failing to give controlling weight to the opinion of Seller's treating physician. Both Sellars and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 24, 26.

After reviewing the parties' arguments, the court has determined that ALJ Wright reached the appropriate decision. There is substantial evidence to support ALJ Wright's conclusion that Sellars can perform light work and that she does not meet or equal Listing 1.02. Additionally, Sellars failed to demonstrate any error in the consideration of the effects of her obesity on her ability to perform work activity or in consideration of the opinion of her treating

physician. Therefore the undersigned magistrate judge recommends[1] that Sellars's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that and that the Commissioner's final decision be affirmed.

## I. Background

On December 13, 2011, Sellars filed an application for disability benefits on the basis of a disability that allegedly began on November 1, 2011. She also protectively filed an application for supplemental security income on December 13, 2011, on the same basis. After her claim was denied at both the initial stage and upon reconsideration, Sellars appeared before ALJ Wright for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Wright determined Sellars was not entitled to benefits because she was not disabled. Tr. at 80–88.

ALJ Wright found that Sellars had the following severe impairments: chronic abdominal pain, obesity, diabetes, hypertension, right shoulder impingement, and gastroesophageal reflux disease ("GERD") *Id.* at 82. ALJ Wright also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 83. ALJ Wright determined that Sellars had the RFC to perform light work with additional limitations: she can occasionally stoop but never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights; and she could occasionally reach overhead with her right, non-dominant upper extremity. *Id.* ALJ Wright also concluded that Sellars was unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there were other jobs that existed in the national economy that she was capable of performing. *Id.* at 86–87. These included: cashier II, non-postal mail clerk. *Id.* at 87–88. Thus, ALJ Wright found that Sellars was not disabled. *Id*. at 88.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

After unsuccessfully seeking review by the Appeals Council, Sellars commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on June 5, 2015. D.E. 6

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to

determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Sellars has a history of abdominal pain, diabetes, obesity, right shoulder impingement and GERD. Tr. at 82. She had an ovarian cyst drained laparoscopically on March 28, 2007. *Id.* at 517. Sellars complained of abdominal pain and nausea in April 2007. *Id.* at 516. Complaining of abdominal pain again in September 2007, Sellars underwent a CT scan of her abdomen on September 19, 2007. *Id.* at 505, 533. In October 2007, Sellars saw her physician for an adnexal mass and pelvic pain. *Id.* at 505. She underwent a laparoscopic oophorectomy later that month. *Id.* at 507–08, 535–37. Sellars was still experiencing abdominal pain in December 2007. *Id.* at 468–70.

Sellars saw her treating provider again in September 2009 complaining of pain, heartburn, and nausea and she was diagnosed with abdominal pain and GERD. *Id.* at 478–80. She went to the Emergency Department in June 2010 for a stomach ache, which was diagnosed as abdominal pain and gastroenteritis. *Id.* at 386–402. She again complained of abdominal pain in December 2010, and a CT scan of her abdomen and pelvis was performed. *Id.* at 623–25. Continuing to have abdominal pain the following month, another CT scan was performed showing cholelithiasis. *Id.* at 619–20, 636. On January 18, 2011, Sellars underwent a laparoscopic cholecystectomy and was diagnosed with chronic cholecystitis with cholesterolosis. *Id.* at 431–33.

Sellars's abdominal pain continued and on March 9, 2011, she underwent a diagnostic laparoscopic procedure for chronic abdominal pain. *Id.* at 451–52, 460–62. In May 2011 Sellars presented at the Emergency Department complaining of severe kidney pain and she was diagnosed with right flank pain. *Id.* at 376–86.

Sellars sought treatment in August 2011 for right side pain radiating into her shoulders and back. *Id.* at 595–96. The following month, complaining of continuing abdominal pain, Sellars had a CT scan of her abdomen and pelvis. *Id.* at 592–94. Sellars continued to seek treatment for chronic abdominal pain in October and November 2011 and January and March 2012. *Id.* at 551–60, 575–77, 588–89, 660–61, 667, 675–79, 863–76. In March and April 2012, Sellars attended physical therapy for her pelvic pain but was discharged because it brought her no relief. *Id.* at 681–86. Her complaints of abdominal pain continued from May through August, September and December 2012. *Id.* at 712–13, 733–38, 740–43, 747–50, 760.

On July 13, 2012, Dr. Ted Bauman, one of Sellars's treating physicians, completed a Medical Source Statement ("MSS"). *Id.* at 687–90. In it, Dr. Bauman opined that Sellars could lift 10 pounds occasionally and less than 10 pounds frequently; was limited to standing and/or walking less than two hours in an eight hour workday because of pain; was limited in pushing and pulling with all extremities; could only occasionally reach due to pain with any movement; could never climb, crawl, or stoop; and could only occasionally kneel or balance. *Id.*

In January 2013, Sellars sought treatment for right shoulder pain. *Id.* at 419–21. The next month, Sellars again complained of abdominal pain, which resulted in weakness and numbness, and it was noted that she had been diagnosed with pelvic floor dysfunction. *Id.* at 710–11. A CT scan of her abdomen was performed several days later. *Id.* at 716–18. In March and April 2013 Sellars was seen at Carolina Sports Medicine and Orthopaedic Specialists for right shoulder pain

radiating down her arm. *Id.* at 853. A May 2013 MRI of the shoulder showed a full thickness rotator cuff tear. *Id.* at 981–84. She underwent arthroscopic surgery to repair the tear with debridement, synovectomy, subacrominal decompression, and distal clavical resection in July 2013. *Id.* at 955–65, 996–97. She thereafter attended physical therapy for her post-surgical right shoulder. *Id.* at 931–63.

She also continued to be treated for abdominal pain in March, April, and May 2013. *Id.* at 808–29, 782–83, 800–07, 847–50, 970–80, 1006–07. Testing included an April 2013 ultrasound demonstrating steatosis (*id.* at 1006–07); an esophagogastroduodenoscopy with biopsy in April 2013 (*id.* at 840–42); an April 2013 CT scan of the abdomen and pelvis showing a mass on the upper pole of the left kidney (*id.* at 845–46); a May 2-13 renal CT scan showing a left upper pole renal mass (*id.* at 843–44); and a May 2013 esophagogastroduodenoscopy with biopsy demonstrating mild diffuse antral gastritis with adherent bilious secretions and a small hiatal hernia (*id.* at 970–80).

Sellars complained of right should pain in October 2013 and again in June 2014. *Id.* at 68–69, 1031–32. Her reports of chronic abdominal pain continued. Sellars underwent a December 2013 CT scan which showed cryoablation in the upper left kidney (*id.* at 64–65); a July 2014 CT scan which showed a right mid ureter stone (*id.* at 52–63); an August 2013 CT scan which showed a 3mm calculus of the right mid ureter (*id.* at 26–32); and an August 2013 cystoscopy, right ureterostomy, stone extraction, right retrograde pyelogram and right stent placement (*id.* at 25–29).

As her complaints of abdominal pain continued, Sellars was referred for pain management. *Id.* at 11–16.

### D. Listing 1.02

Step Three of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe specific impairments in each of the body's major systems that are considered "severe enough to prevent a person from doing most gainful activity." 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step three must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Cauffman v. Astrue*, No. C10-281-JCC-JPD, 2010 WL 5464815, *4 (W.D. Wash. Nov. 12, 2010).

The burden of proof at step three is on the claimant to show that he meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] ... is responsible for deciding ... whether a listing is met or equaled." Social Security Ruling ("S.S.R.") 96–6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding." 20 C.F.R. §§ 404.1526(c), 416.926(c).

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). Where the ALJ fails to make the necessary comparison or fails to explain the basis for his decision other than in a summary or conclusory fashion, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. *Cook*, 783 F.2d at 1173; *cf. Johnson v. Astrue*, 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

At step three, ALJ Wright found that Sellars impairments did not meet the criteria set forth in section 1.00 and other sections of the Listing of Impairments. Tr. at 83. She further noted that Sellars had not displayed the specific clinical or laboratory findings required under this or other sections. *Id.* Listing 1.02, entitled "Major dysfunction of a joint(s) (due to any cause), is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Where, as here, the joint is of the upper extremity, a claimant must also show "[i]nvolvement of one major peripheral joint in each upper extremity

8

(i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B.[2]

As this court has held, "[t]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing." *Kelly v. Astrue*, No. 5:08–CV–289–FL, 2009 WL 1346241, at *14 (E.D.N.C. May 12, 2009) (internal quotation marks omitted); *see Cook*, 783 F.2d at 1172–73 (4th Cir. 1986) (requiring an ALJ to "explain the reasons for the determination that [plaintiff's condition] did not meet or equal a listed impairment" where "there was ample evidence in that record" to support such a finding). In the the absence of any evidence suggesting that Sellars's impairments could potentially meet or equal the requirements of the specified listings, ALJ Wright did not commit reversible error by failing to explicitly identify the listings and explain why her impairments do not meet or equal the criteria of the Listings.

The Court of Appeals for the Fourth Circuit recently discussed an ALJ's findings at step three and the role of the district court in reviewing those conclusions. S*ee Fox v. Colvin*, ---F. App'x ----, 2015 WL 9204287 (Dec. 17, 2015) (unpublished). In Fox, the Fourth Circuit noted

---

[2] The Regulations further define what is meant by the inability to perform fine and gross movements effectively.
> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

1.00B2c.

that the ALJ conducted a conclusory analysis at step three by stating that he had considered the listings. *Id.* at *4. It further noted that the Commissioner invited the court to correct this deficiency by finding that substantial evidence supported the ALJ's decision. *Id.* Finding that the district court erred by engaging in an analysis that the ALJ should have performed in the first instance, the Fourth Circuit concluded that the ALJ's decision failed to provide sufficient findings to allow for "meaningful review." *Id.* at *5. Given the inconsistent evidence regarding the particular Listing, the Court of Appeals vacated and remanded for further fact-finding by the Commissioner at step three. *Id.*

Here, *Fox* is distinguishable inasmuch as the evidence concerning Listing 1.02 fails to offer support for Sellars's position that she meets the Listing. Sellars alleged right shoulder impingement which precludes her use of the right upper extremity. As noted above, she must also demonstrate "[i]nvolvement of one major peripheral joint *in each upper extremity* (i.e., shoulder, elbow, or wrist-hand)[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B (emphasis added). Although the evidence may satisfy this criteria with respect to her right upper extremity, Sellars has not shown, nor does a review of the record disclose, the involvement of her left shoulder, elbow, or wrist-hand joint which renders her unable to perform fine or gross manipulations effectively. While the RFC limited her pushing and pulling, it also permitted reaching and manipulating. Tr. at 83. Further, ALJ Wright noted that Sellars had "relatively accomplished activities of daily living such as continued driving." *Id.* at 86. Additionally, a Third Party Function Report prepared in support of Sellars's disability application related that she can perform some household chores, grooms and feeds herself, and goes grocery shopping and to church. *Id.* at 288–91. In sum, the evidence does not support a finding that Sellars is unable to perform fine and gross movements effectively.

10

Case 7:15-cv-00124-FL   Document 32   Filed 04/07/16   Page 10 of 17

Having failed to demonstrate that she meets or equals the requirements of Listing 1.02, Sellars's argument on this issue should be denied.

**E.    Obesity**

Sellars next argues that ALJ Wright failed to properly consider her obesity. The Commissioner responds that ALJ Wright discussed her obesity at steps two and three and that she adjusted the RFC for the impact of Sellars's obesity. The undersigned concludes that ALJ Wright properly considered Sellars's obesity.

If the records show a claimant is obese, the ALJ must consider the obesity in each of the subsequent steps of the analysis. S.S.R. 02–lp, 2002 WL 34686281, at *3 (Sept. 12, 2002). An individual's Body Mass Index ("BMI") is an appropriate measure of obesity, and a person is considered obese if his or her BMI is 30.0 or greater. *Id.* at *2 ¶ 1. Under S.S.R. 02–lp, obesity is an impairment by itself and can also exacerbate the severity of other existing impairments, such as osteoarthritis, hypertension, and depression. *Id.* at *1, *3, *5. "Obesity can cause limitation of function," and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." S.S.R. 02–1p, 2002 WL 34686281, at*6. "For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.* "The ALJ must assess the entire record to determine the extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other impairments." *Winston v. Astrue*, 4:11–CV–107–D, 2012 WL 40864448, at *3 (E.D.N.C. Sept. 17, 2012); *see also* S.S.R. 02–1p, 2002 WL 3468628, at *4, *6.

Here, ALJ Wright adequately took Sellars's obesity into account in determining her RFC. As noted above, ALJ Wright concluded that her obesity was a severe impairment at step two,

meaning that it significantly limited Sellars's ability to engage in basic work activities. Tr. at 82. At step three, ALJ Wright noted that Sellars was 5'7" and weighed 348 pounds, resulting in a BMI of 54.5. *Id.* at 83. ALJ Wright found that this condition did not rise to Listing-level severity. *Id.* She specifically discussed Sellars's obesity under S.S.R. 02-1p and stated that her obesity "[did] not necessarily correlate to any degree of functional loss[]" but recognized that it "may exacerbate her pain and other impairment symptoms." *Id.*

In particular, the ALJ's discussion reflects the lack of evidence in the record showing limitations beyond that found in the RFC determination due to Sellars's obesity. Although clinical records and findings by examining physicians note her obesity, they do not discuss any functional limitations due to this condition. ALJ Wright specifically discussed this impairment and S.S.R. 02-1p, and also stated that she had considered all of Sellars's symptoms. *Id.* at 83. Moreover, the RFC contains limitations that arguably account for the effects of her obesity on her functional abilities. Having failed to identify other limitations resulting from this condition that are well-supported by the evidence, Sellars's argument on this issue should be rejected.

### F. Residual Functional Capacity

Sellars's next argument asserts that ALJ Wright's finding that she can perform a reduced range of light work is unsupported by the record. The Commissioner maintains that there is substantial evidence to support a conclusion that Sellars is capable of both the physical demands and the mental demands of a reduced range of medium work. The court finds that substantial evidence supports ALJ Wright's RFC determination.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all

12

Case 7:15-cv-00124-FL   Document 32   Filed 04/07/16   Page 12 of 17

the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96–8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

In formulating the RFC, ALJ Wright gave only some weight to the assessment of state agency physician Dr. Parrish, finding her RFC for medium work overstated Sellars's abilities. Tr. at 86. Additionally, ALJ Wright found she could perform the exertional demands of light work with respect to walking, standing, sitting, lifting, and carrying. *Id.* at 83. She further concluded that Sellars was additionally limited in her abilities to stoop and climb. *Id.*

Sellars testified that she has chronic pain that has not been relieved with treatment or medications, that she is limited in her abilities to stand and sit, and that she is unable to perform household chores. However, ALJ Wright found that she was not fully credible. *Id.* at 84. Despite Sellars's claim that Dr. Bauman's MSS supports a finding that she is more limited than ALJ Wright found, his opinion was given only limited weight as she found it was inconsistent with

the other evidence of record. *Id.* at 86. Although Dr. Parrish opined that Sellars was capable of performing medium work, ALJ Wright gave this finding only some weight, concluding that it overstated her abilities and accounted for Sellars's shoulder condition, which did not exist when Dr. Parrish conducted her review. *Id.*

ALJ Wright concluded that light weight appropriately reflected Sellars's abilities. *Id.* at 83. This finding is supported by several factors, which ALJ Wright referenced. First, she noted that Sellars's treatment had been conservative. *Id.* at 84. Additionally, the evidence in the record demonstrated relatively mild findings. *Id.* ALJ Wright also noted that Sellars's activities of daily living were relatively accomplished. *Id.* Finally, ALJ Wright observed that she takes only one pain medication and that Sellars had just recently resumed pain clinic treatment. *Id.* at 86.

In evaluating statements of pain, that ALJ must take into account all the evidence, including "evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it [.]" *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3)). In making this review, ALJ Wright determined that the conservative nature of treatment, relatively mild objective findings, Sellars's activities of daily living, and her treatment with a single medication did not support the intensity of pain to the degree she alleged. Such evidence undermines Sellars's contention that her impairments precluded any work activity. Having failed to demonstrate any error in the formulation of the RFC or to identify any evidence that ALJ Wright did not properly consider, Sellars's argument on this issue should be denied.

### G. Treating physician opinion

Sellars also argues that ALJ Wright erred in failing to give controlling weight to the opinions of her treating physician, Dr. Bauman. Given the treatment relationship that spanned six

years, Sellars contends that Dr. Bauman was in the best position to know whether she could perform work activity. The Commissioner asserts that Dr. Bauman's opinions are not entitled to controlling weight because they are inconsistent with other evidence in the record.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589–90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.* at 590. If the ALJ determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

As noted above, Dr. Bauman issued a MSS dated July 13, 2012 in which he opined that Sellars could only occasionally lift or carry 10 pounds, could not frequently lift anything, could not sit or stand more than two hours in an eight hour workday, and would need to alternate between those positions. Tr. at 687–90. ALJ Wright gave Dr. Bauman's opinions limited weight. *Id.* at 86. While noting the treatment relationship, ALJ Wright concluded that Dr. Bauman's

15

Case 7:15-cv-00124-FL   Document 32   Filed 04/07/16   Page 15 of 17

opinions were inconsistent with the record as a whole and with his own treatment notes which indicated Sellars was feeling well. *Id.* Indeed, as the Commissioner points out, Dr. Bauman offered no objective support for his conclusions regarding Sellars functional limitations. *Id.* at 687–90. Absent clinical, laboratory or other diagnostic evidence, it thus appears that Dr. Bauman based his limitations of Sellars's subjective statements. *See Craig*, 76 F.3d at 589–90 (4th Cir. 1996) (upholding rejection of treating physician's opinion where ALJ opined that doctor's opinion was based on "claimant's subjective symptoms," not supported by "clinical findings or laboratory test results," and contradicted by physician's office notes). Further, two months prior to the July 2012 MSS and then again four months after the MSS, Dr. Bauman's records state that Sellars was feeling well with minor complaints. Tr. at 722, 740. These treatment notes are inconsistent with the very limited functional assessment contained in his MSS which stated that Sellars had pain with any movement. *Id.* at 688–90.

Given this evidence, ALJ Wright concluded that Dr. Bauman's records were inconsistent and afforded his opinion less than controlling weight. Sellars has failed to demonstrate any error in the consideration of Dr. Bauman's opinion and, consequently, is not entitled to judgment in her favor on this issue.

### III.   Conclusion

For the forgoing reasons, the undersigned magistrate judge recommends that Sellars's Motion for Judgment on the Pleadings (D.E. 24) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 26) be granted, and that the Commissioner's final decision should be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: April 7, 2016.

*Robert T. Numbers II*  
ROBERT T. NUMBERS, II  
UNITED STATES MAGISTRATE JUDGE