IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-124-FL

| | |
|---|---|
| JACQUELINE MECHELLE SELLARS,[1] ) ) Plaintiff, ) ) v. ) ) CAROLYN W. COLVIN, ) Acting Commissioner of Social Security, ) ) Defendant. ) | ORDER |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 24; DE 26). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers II entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. (DE 32). Plaintiff timely objected to the M&R, and defendant did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court rejects the M&R, grants plaintiff's motion for judgment on the pleadings, denies defendant's motion for judgment on the pleadings, and remands this case to defendant pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The docket indicates plaintiff's surname as "Sellers." However, upon review of the complaint, administrative record, and other documents, it is apparent that designation is in error. The clerk is DIRECTED to amend the case caption to reflect plaintiff's surname as "Sellars."

## BACKGROUND

On December 13, 2011, plaintiff filed an application for disability insurance benefits and protectively filed an application for supplemental security income, alleging disability onset date of November 1, 2011. Plaintiff's application was denied both initially and on reconsideration. On June 26, 2012, plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after hearing held October 16, 2013, denied plaintiff's application by decision dated January 16, 2014. Later, plaintiff timely requested review by the Appeals Council. The Appeals Council denied review on April 27, 2015, and the ALJ's January 16, 2014, decision became defendant's final decision. On June 5, 2015, plaintiff filed suit in this court, pursuant to 42 U.S.C. § 405(g), seeking review of defendant's decision.

## COURT'S DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is. . .such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but. . .less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

To assist it in its review of defendant's denial of benefits, the court may "designate a

2

magistrate judge to conduct hearings. . .and to submit. . .proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ

3

found that plaintiff had not engaged in substantial gainful activity since November 1, 2011, the alleged onset date of plaintiff's disability. At step two, the ALJ found that plaintiff had the following severe impairments: chronic abdominal pain, obesity, diabetes, hypertension, right shoulder impingement, and gastroesophageal reflux disease. However, at step three, the ALJ determinated that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations (the "listed impairments"). See 20 C.F.R. § 404, Subpt. P, App. 1 (cited hereinafter as "Listing of Impairments").

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: "she c[an] occasionally stoop and never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights; and she c[an] occasionally reach overheard with her right, non-dominate, upper extremity." (Tr. 83). In making this assessment, the ALJ found plaintiff's statements about the severity of her symptoms not fully credible. At step four, the ALJ concluded plaintiff was unable to perform her past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.   Analysis

Plaintiff objects to the ALJ's decision on what broadly may be called two grounds. First, plaintiff contends the ALJ erred when, at step three outline above, it concluded that her impairments did not meet or, either individually or in combination, medically equal any listed impairment and,

4

in particular, listed impairment 1.02, "[m]ajor dysfunction of a joint." See Listing of Impairments § 1.02. That conclusion, says plaintiff, is not supported by substantial evidence. More fundamentally, plaintiff suggests, the ALJ also committed legal error when it failed to analyze her impairments alongside the requirements of listed impairment 1.02. Second, plaintiff broadly challenges the ALJ's analysis and discussion of her obesity. Plaintiff contends the ALJ failed to properly analyze and explain the effect of her obesity at both step three outlined above and during its RFC determination. As plaintiff's argument relates more particularly to the ALJ's RFC determination, plaintiff suggests that the ALJ's failure to explain the impact of her obesity on her functional capacity tainted its analysis of her own testimony and the medical opinion of her treating source, causing the ALJ to weigh improperly both of those items of evidence.

The court concludes that plaintiff's first argument is without merit. She failed to present evidence that her impairments met or, either individually or in combination, medically equaled any of the listed impairments, including listed impairment 1.02. Moreover, because plaintiff failed to present sufficient evidence to even suggest that her impairments met or, either individually or in combination, medically equaled any listed impairment, the ALJ did not commit legal error by not analyzing more specifically plaintiff's impairments alongside any listed impairment. Nevertheless, the court concludes that plaintiff's second argument is meritorious and, thus, requires remand in light of the Fourth Circuit's recent decision in Monroe v. Colvin, __ F.3d __, 2016 WL 3349355 (4th Cir. 2016). In light of the procedural analytical standard announced in that case, the ALJ failed to "'build an accurate and logical bridge from the evidence to his conclusion'" when discussing plaintiff's obesity, the pain it undisputedly caused, and ultimately assessing plaintiff's RFC. See id. at *10 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

5

1. Listed Impairment 1.02

Plaintiff first argues that the ALJ should have found her disabled on the basis of listed impairment 1.02 at step three, thus obviating the need to assess her RFC. To support her argument, plaintiff directs the court to her well-documented history of impairment in her right shoulder. In particular, plaintiff suffers from a right shoulder impingement and has been treated for more than four years for chronic shoulder pain. On May 8, 2013, plaintiff underwent an MRI, which revealed a full thickness rotator cuff tear. (Tr. 982). On July 3, 2013, she underwent an arthroscopic extensive debridement, an arthroscopic synovectomy, an arthroscopic subacrominal decompression, and an arthroscopic distal clavical resection. (Id. 996). As a result of her constant shoulder pain and rotator cuff tear, plaintiff can lift only about five pounds. (Id. 109).

The Listing of Impairments "describes for each of the major body systems impairments that [defendant] consider[s] to be severe enough to prevent an individual from doing any gainful activity," irrespective of vocational factors such as "age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). The listed impairments "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Id. at 530. A social security claimant bears the burden of demonstrating that her "medically determinable" impairments, those impairments expected to either result in death or "last for a continuous period of at least 12 months," id. §§ 404.1525(c)(5) & (d); 416.925(c)(5) & (d), meet or, either individually or in combination, medically equal one of the listed impairments. Id. §§ 404.1525(c)(4)–(5) & 416.925(c)(4)–(5); Pass, 65 F.3d at 1203 (holding social security claimant bears burden of proof at step three).

The listed impairment purported to be relevant here, 1.02, provides that a social security

6

claimant is disabled if she has "[m]ajor dysfunction of a joint" due to any cause. "Major dysfunction of a joint" is defined as "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," with "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Listing of Impairments § 1.02. In addition, and as relevant here, "major dysfunction of a joint" also requires the "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." Id.

The ALJ determined that plaintiff's impairments did not meet or, either individually or in combination, medically equal listed impairment 1.02, and the ALJ's conclusion is supported by substantial evidence. The ALJ's conclusion that plaintiff does not "meet" listed impairment 1.02 is supported by substantial evidence. "For a [social security] claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 493 U.S. at 530. Plaintiff failed to show that she "m[et] all of [listed impairment 1.02's] specified medical criteria" in at least two respects. First, listed impairment 1.02 requires impairment of both upper extremities. As plaintiff admits, however, her long list of impairments affect only her right upper extremity. (See Pl.'s Br., DE 25, 18). Although plaintiff, in her objections, suggests that her obesity tends to negatively affect her ability to use her left upper extremity, that is not sufficient to satisfy the "meets" standard. A "meets" analysis is inflexible; the ALJ must mechanically determine whether the social security claimant "meet[s] all of the specified medical criteria." Zebley, 493 U.S. at 530. The impact of plaintiff's obesity on her ability to use her left upper extremity is a proper consideration only at the "equivalence" stage.

7

Second, and in addition, substantial evidence shows that plaintiff had the ability to perform fine and gross movements in her upper extremities. An impairment renders a social security claimant unable to perform fine and gross movements effectively when it "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Listing of Impairments § 1.00B2(c). Examples of such "very serious" interference include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." Id. In this case, plaintiff's own evidence, a medical source statement submitted by her treating physician, Dr. Ted Bauman, indicates she has "unlimited" ability to perform gross and fine movements. (Tr. 689). More importantly, plaintiff's own testimony demonstrates that she can perform gross and fine movements effectively. For example, plaintiff testified at hearing that she cooked approximately one to two times per week. (Id. 109–10). The ability to prepare a simple meal and feed oneself is the ability to perform gross and fine manipulations effectively. See Listing of Impairments § 1.00B2(c).

The ALJ's decision that plaintiff's impairments do not, either individually or in combination, medically equal listed impairment 1.02 also is supported by substantial evidence. Even though a social security claimant may not "meet" the criteria for a listed impairment, her impairments may "medically equal" those criteria. 20 C.F.R. §§ 404.1525(c)(5) & 416.925(c)(5). A social security claimant's impairments medically equal a listed impairment where they are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a) & 416.926(a). In other words, a social security claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531; accord 20 C.F.R. §§ 404.1526(a) & 416.926(a). However, "[a] [social security] claimant cannot

qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairments. . .is as severe as that of a listed impairment." Zebley, 493 U.S. at 531; cf. 20 C.F.R. §§ 404.1526(b) & 416.926(b). The social security claimant's evidence must be targeted to the most analogous listed impairment's criteria, not the social security claimant's overall functional limitations. See Social Security Ruling ("S.S.R.") 83–19, 1983 WL 31248, at *91–92; see also S.S.R 96-6p, 1993 WL 374180, at *1–2 (reinstating S.S.R. 83–19); Zebley, 493 U.S. at 531.

As noted above, plaintiff argues her obviously restricted right upper extremity, in conjunction with her obesity, is "equivalent" to listed impairment 1.02's specified medical criteria. However, that is not true for two reasons. First, and most broadly, the primary thrust of plaintiff's argument does exactly what S.S.R. 83-19 forbids; rather than point to specific limitations caused by her obesity, she impermissibly contends that her overall functional impairment medically equals listed impairment 1.02. Second, to the extent plaintiff argues her obesity causes specific limitations, the ALJ's decision to reject listed impairment 1.02 at the "equivalence" step is supported by substantial evidence. Again, plaintiff must show that her obesity impaired her ability to perform gross or fine movements. See Listing of Impairments § 1.02; see also id. 1.00B2(c). However, as explained above, there is substantial evidence to suggest that it did not. In particular, her treating physician's medical source statement provides that she has "unlimited" ability to perform gross and fine movements. (Tr. 689). In addition, plaintiff herself testified that she cooks dinner one to two nights per week. (Id. 109–10).

Separate and apart from plaintiff's substantive argument, she also contends that the ALJ committed legal error by not even discussing listed impairment 1.02. Plaintiff correctly contends that the ALJ has a duty to discuss all relevant listed impairments, see Cook v. Heckler, 783 F.2d 1168, 1172–73 (4th Cir. 1986), and that failure to do so "frustrate[s] meaningful review" by this

9

court. See Monroe, 2016 WL 3349355, at *10; see also Cook, 783 F.2d at 1173. However, plaintiff's argument ultimately fails; listed impairment 1.02 was not "relevant" in this case.

The ALJ was required to "identif[y] the relevant listed impairments" and "compare[] each of the listed criteria to the evidence of [plaintiff's] symptoms." Id. It follows by implication that the ALJ was not required to identify and analyze any listed impairment that was obviously irrelevant in light of the evidence of plaintiff's symptoms. See id. In this case, the ALJ's analysis at step three provides in relevant part:

> With regard to physical impairments, upon a review of the evidence, the Administrative Law Judge finds that the claimant's physical impairments do not alone or in combination meet or equal the criteria set forth in sections 1.00, 4.00, 5.00, 9.00, 11.00, or elsewhere in the Listing of Impairments. The claimant has not displayed the specific clinical and laboratory findings required by these sections or any other sections (20 CFR 404 subpt. P, app. 1).

(Tr. 83). Given its brevity and failure of meaningful discussion, the ALJ's opinion only can withstand plaintiff's procedural challenge if listed impairment 1.02 was irrelevant in light of her evidence offered at hearing. Unfortunately for plaintiff (and fortunately for defendant), listed impairment 1.02 was irrelevant.

For one thing, as explained above, plaintiff failed to present any evidence that both her left and right upper extremities were impaired in the manner specified by listed impairment 1.02. Moreover, plaintiff did not present any evidence of her inability to perform gross and fine movements with both her upper extremities. Cf. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("A full explanation by the ALJ is particularly important in this case because [plaintiff's] medical record includes a fair amount of evidence supportive of his claim."). Therefore, the ALJ was not required to discuss listed impairment 1.02 and the ALJ's opinion withstands procedural scrutiny on that basis.

10

2. ALJ's Treatment of Plaintiff's Obesity

Plaintiff next argues that the ALJ's conclusory discussion of her obesity frustrates this court's meaningful review of the ALJ's RFC determination. In particular, plaintiff argues that the ALJ's RFC determination, as well as the ALJ's discussion of her testimony and a medical source statement provided by her treating physician fails to build an "accurate and logical bridge" connecting the evidence to the ALJ's ultimate decision to its conclusions.[2]

The ALJ concluded at step two that plaintiff's obesity was a "severe impairment," something that "significantly limit[ed] [plaintiff's] physical. . .ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). At step three, the ALJ discussed briefly plaintiff's obesity:

> The undersigned has carefully evaluated the claimant's obesity under the criteria of [S.S.R.] 02-1p. The claimant testified to being 5 feet, 7 inches tall and weighing 348 pounds, equaling an obese body mass index of 54.5. The claimant's clinical levels of obesity, however, do not necessarily correlate with any degree of loss of function. The undersigned recognizes that the claimant's obesity may exacerbate her pain and other impairment symptoms, but finds that her obesity does not rise to listing-level severity.

(Tr. 83). Before turning to step four, the ALJ assessed plaintiff's RFC. In making its RFC determination, the ALJ did not specifically address plaintiff's obesity. However, it made reference to plaintiff's obesity in two ways. First, the ALJ indicated that its RFC determination addressed plaintiff's functional limitations, as derived from "all allegations, findings, and opinions. . .to the extent they are given weight." (Id. 84). Second, the ALJ recognized that plaintiff's obesity manifested itself as abdominal pain. (Id. 84–86; see also, e.g., id. 553, 629, 675, 749). Put more simply, the ALJ opined that plaintiff's obesity did "not necessarily" cause any loss of function, but,

---

[2] Plaintiff also contends that the ALJ failed to discuss adequately her obesity at step three. The court herein does not address that argument. Based on the above analysis, a more thorough discussion of plaintiff's obesity at step three would not have been useful; listed impairment 1.02 was obviously irrelevant in this case.

11

to the extent that it did, such loss of function was accounted for in plaintiff's RFC. That cryptic discussion of plaintiff's obesity is insufficient to satisfy the ALJ's obligation to explain its reasoning.

There is no listing for obesity. However, obesity may be a severe impairment, it may affect the ALJ's "equivalence" analysis, and it may affect a social security claimant's RFC. See S.S.R. 02-1P, 2002 WL 34686281, at *4–6. Here, in making its RFC determination, the ALJ obviously recognized that plaintiff's obesity caused some degree of functional limitation, as every relevant medical opinion it cited indicated that plaintiff's chronic abdominal pain (also recognized by the ALJ to be a severe impairment) was secondary to her obesity. (Tr. 84–86; see also, e.g., id. 553, 629, 675, 749). Thus, plaintiff's objection to the ALJ's discussion of her obesity actually targets the ALJ's discussion of her abdominal pain.[3]

Social Security Ruling 96-8p, which explains how the ALJ should assess a social security claimant's RFC, calls for a "function-by-function" assessment of a social security claimant's limitations. S.S.R. 96-8P, 1996 WL 374184, at *1. Once the required "function-by-function" assessment is complete, the ALJ must express a social security claimant's RFC in terms of exertional levels of work. See id. That "function-by-function" assessment must include a threshold level of analysis in order to allow this court to "review meaningfully" the ALJ's conclusions. Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015).

In a recent series of decisions, the Fourth Circuit has clarified the level of analysis a reviewing court should expect, and indeed demand, from defendant's ALJs. The ALJ's analytical rigor is "[a] necessary predicate to engaging in substantial evidence review." Radford, 734 F.3d at

---

[3] Plaintiff reported pain from two primary sources, her abdomen and her right shoulder. The ALJ did not distinguish between those two sources when analyzing plaintiff's RFC.

12

295. Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. A reviewing court cannot be "left to guess about how the ALJ arrived at [its] conclusions." Mascio, 780 F.3d at 637. Rather, it is the ALJ's duty to perform a "function-by-function" analysis and "build an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 2016 WL 3349355, at *10. That "bridge" must withstand this court's analytical scrutiny. See id. at *10–11.

Under the Radford-Mascio-Monroe framework, the ALJ's opinion cannot stand. To begin with, the ALJ's analysis relies heavily on plaintiff's "conservative treatment history" to discount her allegations of abdominal pain. However, the ALJ never explains whether plaintiff's "conservative treatment history" indicates that her treatment was successful. To the extent the ALJ meant plaintiff's successful treatment history, on remand it should say so and cite appropriate evidence to support that conclusion. See Monroe, 2016 WL 3349355, at *11. Moreover, the ALJ's almost-exclusive reliance on plaintiff's "conservative treatment history" appears to be internally inconsistent with other parts of its discussion. For example, the ALJ recognizes that plaintiff's "abdominal pain condition" was "not something for which [plaintiff's physicians] c[ould] provide much relief." (Tr. 86). Nevertheless, the ALJ's reasoning seems to fault plaintiff for not aggressively pursuing an ineffectual course of treatment. Thus, the ALJ fails to explain why plaintiff's "conservative treatment history" is evidence of her exertional capacity, rather than evidence of futility.

In addition, aother ground upon which the ALJ's analysis rests similarly lacks the necessary analytical rigor. In particular, the ALJ rests its RFC assessment on various medical opinions' "relatively mind findings." (Tr. 86). However, the ALJ never identifies specifically what those "mild findings" are, or how they relate to plaintiff's pain. The only piece of evidence the ALJ

13

identifies that could even be considered indicative of "mild findings" are Bauman's treatment notes, which at various intervals indicate that plaintiff reported "feeling well." (See id.).

The ALJ's opinion is troubling where it appears that the ALJ cherry picked certain evidence that was inconsistent with a larger pattern or trend. Even assuming Bauman's treatment notes are evidence of "mild findings" the ALJ failed to explain why isolated incidences of feeling well should be given any weight when they are inconsistent with longitudinal trends. See Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) (observing "hopeful remarks" in treatment notes do not discount the severity of the claimant's bipolar disorder); see also 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2) (treating source opinions given more weight because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)"). Bauman's treatment notes evidence plaintiff's good feelings coming and going over the course of her treatment. (Compare Tr. 588, 716, 730, with Tr. 602, 722). On remand, if the ALJ intends to rely on these statements it must accurately and logically explain why they are entitled to weight despite their apparent inconsistency with the longitudinal trend of plaintiff's complaints.

The ALJ's inadequate explanation is carried through into two other features of the ALJ's analysis. First, the ALJ's treatment of plaintiff pain colored the way the ALJ weighed plaintiff's testimony. In addressing plaintiff's testimony, the ALJ stated: "The claimant's allegations are not fully credible given factors such as the conservative nature of much of her treatment, relatively mild findings, and relatively accomplished activities of daily living such as continued driving." (Tr. 84). Based on those observations, the ALJ afforded plaintiff's testimony "little weight." (Id.). However, that conclusory analysis is insufficient. For the reasons already explained above, the ALJ's treatment of plaintiff's "conservative treatment history" was both non-specific and inconsistent with other portions of its opinion. The ALJ's address of those "mild findings" is similarly inadequate.

14

Finally, the ALJ also discredited plaintiff's testimony in light of her "accomplished activities of daily living." (Tr. 84). However, the ALJ never identifies <u>how</u> or <u>why</u> those activities have any bearing on plaintiff's exertional capacity.

Likewise, the ALJ's treatment of plaintiff's pain also colored the way the ALJ treated the opinion of plaintiff's treating physician, Bauman. Generally, opinions from treating sources are given greater weight than opinions from non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, any medical opinion, even one from a treating source, may be given less weight if it is not well supported or if it is inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); <u>see</u> <u>Craig</u>, 76 F.3d at 590. For example, a conclusory, unsupported statement by a physician that "you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

While an ALJ is under no obligation to accept any medical opinion, he or she must nevertheless explain the weight afforded such opinions. <u>See</u> S.S.R. 96-2p, 1996 WL 374188, at *5; <u>see also</u> <u>Russell v. Comm'r of Soc. Sec.</u>, 440 Fed. App'x 163, 164 (4th Cir. 2011). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered. . .to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" <u>Murphy v. Bowen</u>, 810 F.2d 433, 437 (4th Cir. 1987) (quoting <u>Gordon v. Schweiker</u>, 725 F.2d 231, 236 (4th Cir. 1984)). The ALJ discredited Bauman's opinion in one sentence: "Although Dr. Bauman has treated [plaintiff] for 6 years, per testimony, [his] findings and opinions are given only limited weight due to their inconsistency with the record as a whole, including at his own clinic where notes have indicated reports of feelings well." (Tr. 86).

15

The ALJ's conclusion that Bauman's opinion was "inconsistent with the record as a whole" contains no analysis. Further, insofar as the ALJ's analysis can be gleaned from its surrounding opinion that analysis is deficient. For one example, the ALJ discredited plaintiff's pain because of her "conservative treatment history," an observation apparently inconsistent with the reality of plaintiff's medical situation. For another example, the ALJ failed to explain how plaintiff's isolated and generalized reports of "feeling well" have any bearing on either the overall trajectory of plaintiff's condition or Bauman's opinion.

Defendant attempts to save the ALJ's opinion by arguing the ALJ's discussion of plaintiff's obesity at step three, read in connection with the ALJ's statement that it had incorporated plaintiff's functional limitations into plaintiff's RFC, is a sufficient discussion to satisfy the requirement's of S.S.R. 96-8p. That argument, however, is plainly wrong. By itself, the ALJ's boilerplate statement that it had incorporated "[a]ll allegations, findings, and opinions" into plaintiff's RFC does not give this court the opportunity to meaningfully review the ALJ's reasoning. Moreover, even though the ALJ's remarked that plaintiff's obesity does not "necessarily" cause any functional limitations, that equivocal statement likewise frustrates this court's efforts to meaningfully review the ALJ's reasoning; it evinces no "function-by-function" analysis.

In sum, the ALJ failed to treat properly plaintiff's obesity and the pain caused thereby. As a result, the ALJ failed to explain properly the weight given to plaintiff's opinion and the opinion of her treating physician. For all these reasons, this case must be remanded to defendant for further proceedings.

## CONCLUSION

Based on the foregoing, the court REJECTS the M&R (DE 32), GRANTS plaintiff's motion for judgment on the pleadings (DE 24), and DENIES defendant's motion for the same. (DE 26).

This case is REMANDED to defendant pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of court is DIRECTED to close this case.

    SO ORDERED this the 1st day of August, 2016.

                                                                   LOUISE W. FLANAGAN  
                                                                   United States District Judge

17

Case 7:15-cv-00124-FL   Document 34   Filed 08/01/16   Page 17 of 17